STATE OF INDIANA *v.* AHAUS ET AL.

[No. 28,110. Filed November 2, 1945. Rehearing Denied December 4, 1945.]

630

*James A. Emmert,* Attorney General, and *Connor D. Ross,* Deputy Attorney General, for appellant.

*Charles A. Lowe* and *William M. Turner,* both of Lawrenceburg, for appellee.

STARR, J.—Appellant on October 9, 1940, filed its complaint for condemnation of certain real estate of appellees. This land was sought for the purpose of widening, and in certain places, the changing of the right of way of State Highway No. 56 which was being improved by the State Highway Commission and which highway ran through the farm of the appellees. To the award of the appraisers, appellees excepted and upon trial by jury a verdict was returned in favor of the appellees in the sum of $2,750 with interest at 6% from October 9,

1940, upon which judgment was rendered in the sum of $3,410.00 from which this appeal is taken.

Appellant assigns as error that the court erred in overruling its motion for a new trial. Grounds for said motion are: first, that the court erred in giving at the request of the appellees one instruction; second, and third, the giving on its own motion of two instructions; fourth, the refusal of the court to give 14 instructions tendered by the appellants; fifth, error in the assessment of the amount of recovery in that the amount is too large; and finally, sixth, that the verdict is not sustained by sufficient evidence.

The facts in this case show that the appropriation involved the widening, and in places, the changing of the right of way of an existing road, which said road ran in a general northerly and southerly direction bearing to the west from the southeast; and that it divided appellees' farm approximately in halves; that a great portion of the east half of said farm was a hillside sloping westward towards said road; that the natural flow of surface water from said hillside flowed westward, and that at one point on said road said surface water had cut a gully in the side of a hill causing portions of said surface water to pour in a body onto said right of way. There is no contention that this gully was a natural water course. The evidence also shows that said highway which was widened and changed was improved; that the grade was changed by such improvement, and that the surface water from said improvement and from the land to the east side of said highway was diverted due to said improvement, but that no surface water was collected by the appellant either from said highway or from appellees' farm other than as above indicated.

The record shows that the appellees' tendered one instruction which was given by the court as follows:

"I charge you that a land owner may fight off from his land mere surface waters flowing onto his lands from the lands of an upper proprietor, yet such a land owner may not permit surface waters to come upon his own land and then collect them in a body by a ditch or drain and conduct them in such a body to a place where they will be poured in a volume on the lands of another. So in this case, if you find that the State Highway Commission permits the natural surface water of the Ahaus lands to drain down upon its right-of-way and then collects such surface waters in a roadside ditch along the east side of the highway and by means of said roadside ditch conducts such collected waters in a body to a culvert beneath the newly constructed highway, and then pours or dumps such collected volume of waters upon the right-of-way of the State Highway Commission, upon the west side of such new road from which they flow onto the lands of the defendants in a body, then I charge you that the fact, if it be a fact, that the State Highway Commission, as in the manner described, dumped, or poured such collected surface waters, upon the lands of the defendants, is one which you may take into consideration as an element of damage in fixing the amount which you will award the defendants in this case. *Hunter* v. *Cleveland, Etc., R. R. Co.*, 93 Ind. App. 507-513, 176 N. E. 710.; *Mitchell* v. *Bain*, 142 Ind. 604-618, 42 N. E. 230; *Patoka Township* v. *Hopkins*, 131 Ind. 142, 30 N. E. 896."

The plaintiff's written objections to this instruction which were timely made are as follows:

"The plaintiff, State of Indiana, at the close of the evidence and before the beginning of the argument, objects and excepts to the giving, by the Court, as part of its instructions, defendants' tendered instruction No. 1, for the reason that the evidence shows that all the water collected in the ditch mentioned in the instruction flows from the

lands of the defendants in this case and the evidence further shows that water flows down from a hill side on the east side of the road in question and that the water at times flowed over the highway, that such condition of such water flowing over the adjoining lands of the defendants, and the discharge thereof on the highway in question was an illegal act on the part of the defendants, landowners, and that the authorities in charge of the highway in question had the right to take said water, by means of a drainage structure, beneath the highway to permit its flow into the natural course on the defendants' adjoining lands on the west side of the road in question; that the instruction also cites authorities at the close and is therefore improper."

In considering this instruction it must be remembered that this is an action to condemn real estate for the widening of the right of way of an existing highway in places, and for the entire right of way in other places, and what is done is not merely the change of grade of an existing highway. Furthermore this is not an action sounding in tort. Appellant in making its objections to this instruction has not had these facts in mind.

"The general rules as to the measure of damages, where all or a part of a tract of land is taken for widening a highway, are the same as in other cases where property is taken or damaged for a public use." 18 Am. Jur. 920, *Eminent Domain*, § 281. The measure of damages in this case is fully set out and provided for by § 3-1706, Burns' 1933 (Supp.).

In arriving at the amount of damages in this case every element of damage which will naturally and ordinarily result from such taking may be considered. "The measure of damages must not be confounded with the elements of damage. In the case of *Pittsburgh, etc., R. Co.* v. *McCloskey* (1885),

110 Pa. St. 436, 1 A. 555, involving an appropriation for a railroad, the court very concisely covered the subject in the following paragraph: 'The inconvenience, arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to the fences, fields or farm buildings, not resulting from negligence, and generally all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper matters for consideration.' " *Glendenning* v. *Stahley* (1910), 173 Ind. 674, 682, 91 N. E. 234.

This being a condemnation action, clearly this was the proper and only time to show as a particular element of damage, that the improvement did cause surface water to be precipitated onto the remaining land. "The rule in condemnation proceedings is that all damages, present or prospective, that are the natural or reasonable incident of the improvement to be made, or work to be constructed, not including such as may arise from the negligence, or unskilfulness, or from the wrongful act of those engaged in the work, must be assessed." *The Chicago and Indiana Coal Railway Company* v. *Hunter* (1890), 128 Ind. 213, 220, 27 N. E. 477.

Although this instruction seems to have been drawn on the theory of the accumulation of surface water and of the unlawful diversion of it onto land of another, yet the same has not harmed the plaintiff in this case, as the changing of the flow of surface water could be considered as an element of damage in this case.

Although we do not condone the practice of citing cases in an instruction as done here, and are of the

opinion that said practice should be condemned, we do not think that this irregularity is of sufficient gravity in this case as to warrant a reversal.

The Court's Instruction No. 16 on the subject of general benefits, reads as follows:

"In order that benefits may be set off against the damage to the land not taken in making said improvement, the court charges you that said benefits, if any, must be special or local or such as results directly or peculiarly to the particular tract of land of defendant. General benefits resulting to the owners in common with the public cannot be set off."

The plaintiff's written objections to this instruction are as follows:

"The plaintiff at the close of the evidence and before the beginning of the arguments, objects and excepts to the giving of the Court's Instruction No. 16, for the reason that any benefit that results to the property affected that increases the value thereof should be considered whether such benefit is shared by other landowners or not, since citizen's owning and living on land along other highways had their damages or benefits fixed and they may not be considered as receiving any benefits from the construction of the highway involved in this cause that were not considered at the time that such highways were laid out and constructed along their land or along land upon which they reside."

This instruction is proper on the question of benefits. See *Lipes* v. *Hand* (1885), 104 Ind. 503, 1 N. E. 871, 4 N. E. 160. On page 506 of this opinion the court approves the following language taken from 2 Dillon Mun. Corp. (3d ed.) § 624:

"And here, most usually, arises the difficult inquiry, What benefits and what injuries are proper to be regarded as affecting the question of dam-

ages? Now, benefits and injuries are of two kinds: I. General or public, being such as are not peculiar to the particular proprietor, part of whose property is taken, but those benefits in which he shares and those injuries which he sustains in common with the community or locality at large. II. Special or local, being those peculiar to the particular landowner, part of whose property is appropriated, and which are not common to the community or locality at large, such, on the one hand, as rendering his adjoining lands more useful and convenient to him, or otherwise giving them a peculiar increase in value, and, on the other, rendering them less useful or convenient, or otherwise, in a peculiar way, diminishing their value. The former class of benefits or injuries—namely, those which are general, and not special—have, according to the almost uniform course of decision, no place in the inquiry of damages, and can not be considered for the purpose of reducing the amount, being too indirect and contingent; but injuries which specially affect the proprietor, or benefits which are specially conferred upon his adjacent property, part of which is taken, are to be considered, unless, by the Constitution of the State or legislative enactment, all benefits, special as well as general, are to be excluded."

See also *C. C. C. & St. L. Ry. Co.* v. *Mumford* (1935), 208 Ind. 655, 671, 197 N. E. 826.

Of the refusal of instructions tendered, the appellant has waived all such rulings except as to its tendered instructions No. 13 and 14.

■ Appellant's tendered instruction No. 13 reads as follows:

"I instruct you that the public authorities in charge of highways have the same right under the law as a landowner to fight off surface waters from the public highways; and if you find that the defendants had permitted a ditch or ditches to be cut and formed on land owned by them that was higher than the highway in question and that the ditch or ditches so cut and formed were the means

of the collection of surface water that was discharged upon the highway as it existed before the appropriation of the strip involved in this cause, then I instruct you that the State Highway Commission had the authority to raise the grade of the highway or to carry said surface water under the highway by means of a drainage structure and discharge such water on the opposite and lower side of the road without subjecting the public to payment of compensation therefor; and, if you find that the appropriation of the strip involved in this cause did not of itself necessitate the change of grade or the construction of such drainage structure for such purpose, the defendants would not be entitled to damage for such acts."

This instruction was properly refused, as the same does not conform to the evidence, as the evidence without dispute shows that there was a change of grade in the construction of the roadway, and that only portions of the surface water to the east of said new roadway came down the gully described in the evidence.

Appellant's tendered instruction No. 14 reads as follows:

"I instruct you that the damages, if any, to which the defendants are entitled must be shown to have resulted solely from the appropriation of the strip of real estate for highway purposes involved in this proceeding. It is the law of this State that the highway officials in charge of a highway may raise or lower the grade thereof, and provide proper drainage thereof by fighting off surface water, without payment of compensation to an adjoining landowner; and if you find that, before the appropriation of the strip in question, surface water flowed from a hill on defendants' adjoining lands down upon the highway as it previously existed, by means of a ditch or ditches and spread out, over and upon the highway, the State Highway Commission had the authority to raise the grade of the existing highway and to fight off surface water that so flowed down upon it by carrying it under

said highway by means of a drainage structure without subjecting the public to payment of damages, if any, caused by said water flowing over and upon adjoining lands of the defendants on the opposite or lower side of the road."

This tendered instruction has the same infirmity as the appellant's tendered instruction No. 13, and there was no error in refusing the same.

Instruction No. 23 on the question of interest given by the Court on its own motion reads as follows:

"The Court further instructs you that if you should find for the defendants, you must award such damages to which you think they are justly entitled, with interest at 6% per annum from the time the State of Indiana actually entered into possession of such land and in fixing the amount of such an award, you should consider each and every element of damage shown by the evidence to exist, and to have been caused by reason of the appropriation of the land in question and the construction of said improvement."

The plaintiff's written objection to this instruction is as follows:

"The plaintiff objects and excepts to the giving of the Court's instruction No. 23, for the reason that it permits the jury to allow interest on any amount found as damages that resulted to defendants by reason of the taking; that the record shows that the award made by appraisers was not excepted to by the plaintiff and hence, defendants could have received the amount of the award in 1940; that there is no evidence showing defendants entitled to interest; that the right to interest is purely a statutory and not a constitutional right; that no statute of Indiana provides for the allowance of interest in proceedings by the State to condemn property for a public use; that the State or sovereignty is not within the terms of the general statute on the subject of interest."

This instruction correctly states the law in regard to interest, to hold otherwise would be to overrule several well-considered cases, among them *State ex rel. McNutt v. Orcutt* (1936), 211 Ind. 523, 199 N. E. 595, 7 N. E. (2d) 779.

We approve of the view taken in the last mentioned case, that interest on damages is proper and should be included in the verdict, and the jury should be instructed accordingly, and that there should be evidence as to the date of the taking possession on the part of the State. It will be noted however, that one of the objections to this instruction was that there was no evidence showing that the defendants were entitled to interest. This presents the same question as is presented by the appellant's fifth and sixth grounds for a new trial. If there was no proof as to when the State took possession of the real estate condemned, then there was no evidence upon which to base this instruction and the assessment of the amount of recovery is too large, and also, the verdict is not sustained by sufficient evidence. The verdict in this cause was in the following words and figures:

"We, the Jury, find for the defendants and assess defendants' damages in the sum of $2750.00 dollars, with interest at 6% from October 9, 1940, the time of the taking of the land, by reason of the appropriation of the land described in the complaint."

This form of verdict is unusual although proper. *Gaff v. Hutchinson* (1871), 38 Ind. 341. Upon the examination of the record in this case, we find that the evidence discloses that the appellant began work on the construction of this improvement in the fall of 1940, and that the same was completed on September 21, 1941; that all of the fill of the road was completed in 1940. It is true that this evidence does not specifically prove the exact

day of any month when the appellant took possession, but certainly it does prove that if there was any error as to the actual date of taking possession, this error was trivial and a new trial should not be granted for such slight error *De minimis non curat lex.*

Appellant, for the first time, in its brief, contends that the removal by the appellee of a certain corncrib from the grounds which were condemned, ▮ amounted to a partial acceptance of the award of the appraisers, and that by such acceptance the verdict is not sustained by sufficient evidence. There was some evidence introduced without objection that the corncrib was so removed, but the evidence wholly fails to show under what conditions or agreement such removal was made. For all we know, the same might have been given to the appellees for the moving of it or for any other reason consistent with the verdict.

Judgment sustained.

NOTE.—Reported in 63 N. E. (2d) 199.