**BRADFORD et al.**

v.

**MAGNOLIA PIPE LINE CO.**

No. 3038.

Court of Civil Appeals of Texas.

Eastland.

Nov. 6, 1953.

Weldon Kirk, Sweetwater, for appellants.

Mays & Leonard, Sweetwater, Jack Vickrey, Roy L. Merrill, Dallas, for appellee.

COLLINGS, Justice.

This action was brought by the Magnolia Pipe Line Company, a corporation, as plaintiff, against defendants, Jack C. Bradford and wife, Vira Sue Bradford, and Doyle F. Hammack and wife, Louise D. Hammack, for condemnation of an easement containing 1.91 acres and being 50 feet in width across a 139 acre tract of land for the purpose of a right of way thereon for the construction, operation, maintenance and repair of pipe lines for the transportation of oil and gas and their by-products. An award of damages to defendants was made by special commissioners appointed in the proceeding and Magnolia Pipe Line Company appealed from such award. Thereafter a trial was had in the county court before a jury and based upon its verdict, judgment was rendered awarding defendants $100 as compensation and damages for such easement and right of way. Defendant landowners have appealed.

After appellants and appellee had rested and closed their case, and after the court had overruled appellants' motion for an instructed verdict, there was a discussion between the court and counsel for both sides concerning the charge to be given to the jury, at which time counsel for appellee company submitted to the court a proposed charge. A copy of such proposed charge was at the time furnished appellants' counsel who examined same and made no objection thereto, although he did request one additional issue which is not material to the point here under consideration. The court advised counsel for both parties that he would give the charge requested by appellee, to which counsel for appellants made no objection. The wording of the requested charge disclosed that it was submitted to the court and requested by appellee company. The

court desired to present the requested issues and instructions as the court's charge to the jury and not as a requested charge. He informed the parties that he would have his secretary re-type the charge and delete portions which indicated that such issues had been requested by counsel for appellee. After the charge had been re-typed with deletions made as indicated, court was re-convened and the judge announced his intention to read the charge to the jury. Attorney for appellants, though present in the court room, made no objection to the charge, requested no additional issues or instructions, did not request additional time to study the charge, and did not advise the court that he had failed to receive a copy of the final draft of the charge. The charge which was identical to the charge requested by appellee with the exception of references to appellee's request therefor, was then read to the jury. The first complaint by appellants that their counsel did not receive a copy of the charge was in appellants' amended motion for a new trial which was filed some two months after the date of the trial.

■ Appellants' first point which urges that the court erred in failing to submit the court's charge to his attorney for inspection prior to the reading of same to the jury, is overruled. Appellants' attorney received a copy of appellee's requested charge identical with the charge given by the court with the exception of certain deletions of which counsel had full knowledge. If he had received a copy of the court's charge he would have gained no information therefrom that he did not already possess. Under the circumstances, there was nothing unusual in the fact that he did not desire or care to inspect it. Counsel did not object when the court announced his intention to read the charge to the jury or during the reading of the charge, and made no request for a copy of the charge or for additional time in which to inspect same. The first complaint concerning the matter was in appellants' amended motion for new trial filed about

two months subsequent to the date of the trial. In our opinion, appellants suffered no harm by the failure to submit the court's charge to their attorney. Their right to inspect the charge was, under the circumstances, waived. Western Indemnity Co. v. Toennis, Tex.Civ.App., 250 S.W. 1098 (Err. Ref.); Hranicky v. Trojanowsky, Tex.Civ.App., 153 S.W.2d 649 (Err. Ref. W.M.); Liddell v. Gordon, Tex.Civ.App., 270 S.W. 564 (Err. Dis.).

After the court had finished reading the charge to the jury, counsel for appellants, in the presence of the jury, verbally requested an additional issue. The court required the jury to retire from the court room and permitted counsel for appellants to dictate his requested special issue to the court reporter in the presence of the court and opposing counsel. The requested issue was as follows:

"From a preponderance of the evidence, what value do you place on the depreciation of the remainder of the defendants' land as a result of said pipe line having come through defendants' land? Answer in dollars and cents."

■ The court refused to submit the above requested special issue to the jury and such action is urged as error in appellants' second point. It is contended in appellants' third point that the failure of the court to submit an issue covering depreciation to the balance of the land was fundamental error. We cannot agree with these contentions. The requested special issue inquired concerning facts which appellants had the burden to establish and which they could insist upon or waive as they might desire. Rule 279, Texas Rules of Civil Procedure, provides that a special issue, definition or explanatory instruction must be tendered "in substantially correct wording" and that the failure to submit an issue should not be deemed ground for reversal of the judgment unless so tendered. The issue tendered by appellants was not "in substantially correct wording." It was not "substantially correct" in that it assumed a disputed fact, i.e., that the

presence of the pipe line and easement had resulted in depreciation to the balance of appellants' land. Appellants' second and third points are overruled.

Appellee, Magnolia Pipe Line Company, alleged in its petition to condemn that it was a corporation duly incorporated under the laws of the State of Texas, and that under the provisions of Articles 1497 and 6022, Vernon's Annotated Revised Civil Statutes, it was vested with the power of eminent domain for the purpose of acquiring easements and rights of way for the laying, constructing, maintaining and operating pipe lines for the transportation of oil and gas. Appellants' answer contained no sworn denial of appellee's allegations of incorporation. At the trial appellee company introduced a photostatic copy of its charter, certified to by the Secretary of State. Upon conclusion of the evidence, appellants filed a motion to "dismiss said cause for lack of jurisdiction" because there was no evidence showing that the corporate charter of appellee company had not been forfeited and that it remained a valid and subsisting charter at the time of the trial. The motion to dismiss was overruled and appellants urge in their fourth point that such action of the court was reversible error. We cannot agree with this contention. Appellee company made proper proof of its corporate capacity by introducing a photostatic copy of its charter certified to by the Secretary of State as of September 29, 1952. In the absence of pleadings or proof by appellants to the contrary, it is to be presumed that the charter has not been revoked. It is also noted that Rules 52 and 93, subds. b and g, Texas Rules of Civil Procedure, provide that allegations of incorporation are taken as true unless denied under oath. Appellants did not make such denial under oath and appellee's allegations of incorporation should; therefore, be taken as true.

Appellants' attorney, in his cross examination of Tom Sewell, a witness for appellee, propounded a question inquiring whether appellee's pipe line, in crossing appellants' land, made a direct line from the point of gathering to the company's pump station. Appellee's objection to this question was sustained and appellants urge in their sixth point that such action was reversible error. There is no showing in the record by bill of exception or otherwise, what the answer of the witness Sewell would have been to the question propounded, and, therefore, no harmful error is shown. Under the circumstances, the matter cannot be considered. Rules 372 and 373, Texas Rules of Civil Procedure; Texas Lloyds v. Laird, Tex.Civ.App., 209 S.W.2d 937 (Err. Dis.); Johnson v. Poe, Tex.Civ.App., 210 S.W.2d 264 (Ref. N. R. E.).

At the conclusion of the evidence appellants made a motion to dismiss the case for lack of jurisdiction because there was no evidence to show that a necessity existed to condemn an easement 50 feet in width across appellants' lands rather than a narrower strip. Appellants' fifth point complains of the action of the court in refusing such motion. The evidence shows that appellee, Magnolia Pipe Line Company, is by its charter authorized to operate a crude oil pipe line as a common carrier. The power of eminent domain has been delegated to such crude oil common carriers by Articles 1495–1497 and 6022, Vernon's Annotated Revised Civil Statutes. Article 6022 provides:

"Every * * * corporation * * * owning, operating or managing any pipe line * * * within this State for the transportation of crude petroleum that is declared by this title to be a common carrier, shall have the right and power of eminent domain in the exercise of which * * * it * * * may enter upon and condemn the lands, rights of way, easements and property of any person or corporation *necessary* for the construction, maintenance or operation of * * * its * * * common carrier pipe line". (Italics ours.)

No evidence was introduced showing or tending to show a necessity for condemnation of appellants' lands in the construc-

tion of its pipe line, or for any particular width of right of way.

■ Generally speaking, where the power of eminent domain exists, the amount of land to be taken and the necessity therefor is within the sound discretion of the condemnors, and such discretion may not be disturbed by the courts in the absence of capricious or arbitrary action. 29 C.J.S., Eminent Domain, § 89, pages 882, et seq.

In Cane Belt Ry. Co. v. Hughes, 31 Tex.Civ.App. 565, 72 S.W. 1020, the following statement of the rule and the reasons therefor, is made:

"It is well settled that as to what land a railway company may select for its right of way and depot grounds the discretion of the company is absolute, and will not be revised by the courts. In the proper construction of railways and their necessary appurtenances, the public have a large interest, and for this reason the power of eminent domain is conferred, if different courts and juries were allowed to pass on the necessity or advisability of condemning each tract out of the many which go to make up a right of way for a railway line, straight courses from point to point, with the consequent lessening of mileage, would in many, if not all, cases be impossible to secure. So in the case of depot grounds. One jury might hold, on competent evidence, that the land in question was not necessary to the purposes of the railroad. Another might render a like verdict as to any other tract sought to be subjected to its uses, and by such a course the company could be excluded altogether. So the rule is that the company, having shown its corporate existence, and a purpose to use the land for corporate purposes, may have its decree of condemnation, subject to the payment of the market value of the property taken, and incidental damages when less than the whole tract is taken."

Appellants contend that the use of the word "necessary" in the Articles of the Statutes granting the power of eminent domain to pipe line companies creates an exception to the general rule above stated. In this connection, Nichols on Eminent Domain, Vol. 1, page 383, states as follows:

"* * * the legislature may, and usually does, delegate the power of selecting the land to be condemned to the public agent that is to do the work; in such case it makes little, if any, difference whether the grant of authority is, in terms, limited to such land as is 'necessary' for the purpose in view, for a general grant of authority carries the same limitation by implication and in either case the necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final as long as it acts reasonably and in good faith."

There was no showing of capricious or arbitrary action amounting to an abuse of discretion by appellee company and the court properly refused appellants' motion to dismiss on the ground urged. The point is overruled. The following cases and authorities are cited in support of our disposition of this matter: Crary v. Port Arthur Channel & Dock Co., 92 Tex. 275, 47 S.W. 967; Cane Belt Ry. Co. v. Hughes, 31 Tex.Civ.App. 565, 72 S.W. 1020; Pecos & N. T. Ry. Co. v. Malone, Tex.Civ.App., 190 S.W. 809, reversed on other grounds, Tex.Com.App., 222 S.W. 217; McInnis v. Brown County Water Imp. Dist. No. 1, Tex.Civ.App., 41 S.W.2d 741 (Err. Ref.); Schooler v. State, Tex.Civ.App., 175 S.W.2d 664 (Err. Ref.); Snellen v. Brazoria County, Tex.Civ.App., 224 S.W.2d 305 (Err. Ref.); Brazos River Conservation & Reclamation Dist. v. Harmon, Tex.Civ.App., 178 S.W.2d 281 (Err. Ref.); 18 Am.Jur., Eminent Domain, Sec. 107, p. 882; Nichols on Eminent Domain, Sec. 3.1(2).

■ Article 3264 provides that any corporation or governmental agency or subdivision desiring to exercise the right of eminent domain shall, before filing an application to condemn real estate make a bona fide effort to agree with the land owner on the amount of compensation and dam-

ages to be paid. Appellee company, in its petition to condemn an easement over the lands in question, alleged that it had made a bona fide effort to agree with appellants on the compensation and damages therefor. Upon the trial the following testimony was elicited from Tom Sewell, a right of way and claim agent for appellee company:

"Q. Now does that gathering line cross the Jack Bradford place? A. Yes.

"Q. Did you attempt to purchase an easement across this place from Jack Bradford and his renter, Doyle S. Hammack? A. Yes.

"Q. Could you all agree on a price? A. No, we were unable to agree on price."

"On cross-examination by Mr. Kirk, attorney for appellants, Mr. Sewell testified as follows:

"Mr. Kirk. That is fine. Did the defendants approach you and try to sell the right of way to you? A. No.

"Q. You approached them? A. Yes.

"Q. Did they want to sell the right of way? Did they act like they wanted to sell it? A. Yes, I think they wanted to sell it.

"Q. Did they act like they wanted to sell it? A. Yes.

"Q. They didn't ask you to go around them? A. Yes.

"Q. But you think they wanted to sell it? A. I do.

"Q. That is your opinion? A. Yes."

Concerning this matter, appellant Jack Bradford testified:

"Q. Jack, who approached you when this pipe line was * * * A. Well, Mr. Sewell was the first fellow that approached me and came to my office to offer me $52.00 for the right of way.

*   *   *   *   *   *

"Q. Jack, I will ask you this—did they make a bona fide effort to agree with you on the value of that land? A. No, sir, Mr. Sewell never did try to make a bona fide effort, or none of the Magnolia Pipe Line Company ever did, none of them.

"Q. They make you one offer? A. One offer.

"Q. Which you refused? A. Which I refused.

"Q. Was that offer in line with the other offers that you knew of personally?

*   *   *   *   *   *

"A. No, they were not."

At the conclusion of testimony, appellants moved the court to dismiss the case for lack of jurisdiction on the ground that there was no evidence that appellee company made a bona fide effort to agree with appellants upon the amount of compensation and damages to be paid them. The motion was overruled by the court and such action is urged as error in appellants' seventh point. Appellants' eighth point complains of the action of the court in refusing to submit to the jury the following requested special issue:

"Do you find from a preponderance of the evidence that plaintiffs made a bona fide effort to agree with the defendants upon the value of the land sought to be condemned?"

The testimony of the witness Sewell and of appellant Jack Bradford both show that Sewell, as a representative of appellee company, approached appellants and made an offer for the right of way easement. The effect of the testimony of both is that the offer was refused and that the parties were not able to agree on the price to be paid appellants. This testimony was undisputed except for the further testimony of Jack Bradford that the efforts made by appellee company to agree "were not bona fide." Such testimony by Bradford was merely a conclusion on his part and has

no probative force. The court did not err in overruling appellants' motion for an instructed verdict on the grounds stated and properly refused to submit an issue as to whether the parties had made a bona fide effort to agree on the compensation and damages due appellants. Webb v. Reynolds, Tex.Com.App., 207 S.W. 914; Brackenridge v. Claridge, 91 Tex. 527, 44 S.W. 819, 43 L.R.A. 593; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97.

The judgment of the trial court is affirmed.